(SEALED)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 14cr10276 |
| | ) |
| JOHN WILLIAM CRANNEY, aka | ) VIOLATIONS: |
| JACK CRANNEY | ) |
| Defendant. | ) 18 U.S.C. §1343 (Wire Fraud) |
| | ) 18 U.S.C. §1341 (Mail Fraud) |
| | ) 18 U.S.C. §1957 (Monetary Transactions |
| | )   in Property Derived from Specified |
| | )   Unlawful Activity) |
| | ) 18 U.S.C. §§981, 982 and |
| | ) 28 U.S.C. §2461 - |
| | ) (Criminal Forfeiture |
| | )   Allegation) |
| | ) |

## INDICTMENT

The Grand Jury charges that:

## BACKGROUND

1. At all times relevant to this Indictment, defendant **JOHN WILLIAM CRANNEY, also known as JACK CRANNEY ("CRANNEY"),** was an individual living in Belmont, Massachusetts.

2. B.A., R.B., L.B., J.C., A.D., M.J.E., R.E., E.F., K.F., R.G., G.M., J.M., M.M., R.P., V.R., D.S., E.S., J.A.S., N.S., K.S., E.W.S., J.S., P.V., and R.V. are individuals known to the Grand Jury who are among the victims of the fraud scheme set forth herein.

## **THE FRAUD SCHEME**

3. Beginning in or about 2001 and continuing until in or about 2012, **CRANNEY** devised and executed a fraudulent scheme by which he induced individuals to send him funds by mail and wire by representing, falsely, that he would invest those funds and pay the individuals a guaranteed rate of return. In fact, as **CRANNEY** well knew, he did not intend to invest the funds he received, but instead to use them for his own personal and business purposes and to make payments to others who had invested money with him.

4. In furtherance of this fraudulent scheme, **CRANNEY** did the following, among other things:

    a. Solicited people with whom he had personal and business relationships to give him money to invest on their behalf;

    b. Held himself out as a financially successful businessman when, in fact, as **CRANNEY** well knew, his personal and business expenses regularly exceeded his legitimate income.

    c. Represented to some prospective investors that he had made a lot of money investing in the stock market, both for himself and for others, all of which **CRANNEY** knew was false. **CRANNEY** showed some prospective investors a room in his home that contained multiple computers and large-screen monitors, and represented to them that he worked in that room making money for people in the stock market;

    d. Promised a guaranteed rate of return, usually in an amount of 2% above the prime rate. **CRANNEY** guaranteed some people a fixed rate of return in amounts as high as 10%;

e.  Represented that the funds he received would be invested to earn money to pay the promised returns. **CRANNEY** further represented to several victims that their money would be invested in stocks and similar investments. In fact, **CRANNEY** did not intend to invest the money, but instead to use it for his own personal and business purposes, and to repay other investors.

f.  Represented to some investors that their money was pooled in funds holding millions of dollars when, in fact, as **CRANNEY** well knew, he did not hold accounts with large sums of investors' money, because **CRANNEY** promptly disbursed most of the funds he received for his own purposes and also used the money to make payments to other investors and to creditors;

g.  Represented to some investors that they could withdraw their money at any time, or with just a short advance notice to **CRANNEY**. In fact, however, **CRANNEY** offered most investors who attempted to get their money back excuses about why their money was unavailable and could not be withdrawn at that time. **CRANNEY** well knew that those excuses were false, and that **CRANNEY** could not return investors' funds because he had long since spent them.

h.  After investors had given **CRANNEY** their money to invest, **CRANNEY** sent them unsecured promissory notes signed by **CRANNEY** setting forth the guaranteed returns he had promised. When investors questioned **CRANNEY** about why he had sent them promissory notes,

**CRANNEY** usually falsely explained that it was done for tax reasons or otherwise for the benefit of the investor.

i. Established official-sounding investment entities named Cranney Capital I LLC and Cranney Capital III, Inc., and directed investors to send their money to those entities. **CRANNEY** used the entity names in documents sent to investors, including promissory notes, correspondence, and account reports. **CRANNEY** thereby led investors to believe that their funds were being invested through those entities, when in fact **CRANNEY** caused all funds deposited to those accounts to be transferred promptly to **CRANNEY's** other personal and business accounts for his own purposes.

j. Established the Cranney Capital I LLC Employee Stock Ownership Trust ("ESOT"), which he represented to prospective investors was a "qualified" plan into which they could "rollover" monies from their IRA and 401(k) retirement accounts without paying withdrawal taxes and penalties. In fact, as **CRANNEY** well knew, none of the investors was his employee or an employee of Cranney Capital I LLC. **CRANNEY** established the ESOT to persuade investors to send him funds from investors' IRA and 401(k) retirement accounts, which funds those investors would otherwise have not sent him.

k. Caused reports to be sent to some investors that purported to represent the amounts that had been earned by investors, as well as the total balance in their investment accounts. In fact, as **CRANNEY** well

4

knew, those stated returns were fictitious, and the stated balances did not exist because the funds had long since been spent by **CRANNEY** for investment for his own personal and business uses and to make payments to other investors and creditors.

5. By means of this fraudulent scheme, **CRANNEY** defrauded at least 15 individuals of more than $6 million.

## COUNTS 1-4

## WIRE FRAUD
## (18 U.S.C. §1343)

6. The Grand Jury re-alleges and incorporates by reference paragraphs 1-5 of the Indictment, and further charges that:

7. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

### JOHN WILLIAM CRANNEY,
### aka JACK CRANNEY

having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, as follows:

| COUNT | DATE (on or about) | WIRE TRANSMISSION |
| --- | --- | --- |
| 1 | October 25, 2010 | $193,000 sent by wire from a Charles Schwab account in California controlled by A.D. to **CRANNEY's** Cranney Capital I LLC ESOT account at Bank of America in Massachusetts |
| 2 | 2010 | Telephone call between **CRANNEY** in Massachusetts and M.M. in Utah in which **CRANNEY** assured M.M. that his investment was doing well |
| 3 | February 18, 2011 | $105,826.01 sent by wire from an account controlled by J.C. in Virginia to **CRANNEY's** Cranney Capital I LLC ESOT account at Bank of America in Massachusetts |

6

| | | |
|---|---|---|
| 4 | April 2, 2012 | $63,045.30 sent by wire from an account controlled by K.S. in Texas to **CRANNEY's** Cranney Capital I LLC ESOT account at Bank of America in Massachusetts |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 5-20

## MAIL FRAUD
## (18 U.S.C. §1341)

8. The Grand Jury re-alleges and incorporates by reference paragraphs 1-5 of the Indictment, and further charges that:

9. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

## JOHN WILLIAM CRANNEY,
## aka JACK CRANNEY,

having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting to do so, placed and caused to be placed in post offices and authorized depositories for mail matter, things to be sent and delivered by private or commercial interstate carrier, and knowingly caused to be delivered by such carrier matter and things according to the direction thereon, as follows:

| COUNT | DATE (on or about) | MAILING |
| --- | --- | --- |
| 5 | September 30, 2009 | Report sent by mail from **CRANNEY** in Massachusetts to V.R. |
| 6 | September 30, 2009 | Checks in the amounts of $200,000 and $75,000 sent by Federal Express by J.A.S. and D.S. to **CRANNEY** in Massachusetts |
| 7 | October 8, 2009 | Report sent by mail from **CRANNEY** in Massachusetts to V.R. |
| 8 | December 8, 2009 | Letter and attachments sent by Federal Express from **CRANNEY** in Massachusetts to R.B. |

| | | |
|---|---|---|
| 9 | December 14, 2009 | $10,000 check sent by mail from **CRANNEY** in Massachusetts to E.S. and N.S. |
| 10 | March 4, 2010 | $15,000 check sent by mail from R.G. to **CRANNEY** in Massachusetts |
| 11 | March 5, 2010 | $100,000 check sent by Federal Express from E.W.S. to **CRANNEY** in Massachusetts |
| 12 | March 24, 2010 | Checks in the amounts of $100,000 and $30,000 sent by Federal Express from E.W.S. to **CRANNEY** in Massachusetts |
| 13 | December 15, 2010 | $10,000 check sent by mail from **CRANNEY** in Massachusetts to E.S. and N.S. |
| 14 | December 15, 2010 | Checks in the amounts of $50,000 and $20,000 sent by Federal Express from E.W.S. to **CRANNEY** in Massachusetts |
| 15 | December 17, 2010 | $33,463.00 check sent by Federal Express from **CRANNEY** in Massachusetts to M.J.E. and R.E. |
| 16 | February 28, 2011 | $210,157.47 check sent by mail from The Northern Trust Company for the benefit of J.C. to **CRANNEY** in Massachusetts |
| 17 | June 8, 2011 | Letter and Report sent by mail from **CRANNEY** in Massachusetts to B.A. |
| 18 | September 19, 2011 | Checks in the amount of $15,000, $35,000, and $50,000 sent by Federal Express from E.W.S. to **CRANNEY** in Massachusetts |
| 19 | December 19, 2011 | Report sent by mail from **CRANNEY** in Massachusetts to R.P. |
| 20 | January 22, 2012 | Letter and Report sent by mail from **CRANNEY** in Massachusetts to G.M. |

All in violation of 18 U.S.C. Sections 1341 and 2.

## COUNTS 21-23

## MONEY LAUNDERING
## (18 U.S.C. §1957)

10. The Grand Jury re-alleges and incorporates by reference paragraphs 1-5 of the Indictment, and further charges that:

11. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

### JOHN WILLIAM CRANNEY,
### aka JACK CRANNEY,

did knowingly engage and attempt to engage in monetary transactions in criminally derived property that was of a value greater than $10,000 and was derived from specified unlawful activity, to wit, wire fraud and mail fraud, as follows:

| Count | Date (on or about) | Specified Unlawful Activity | Monetary Transaction |
|---|---|---|---|
| 21 | March 10, 2010 | Mail Fraud Count 11 | $50,342.00 Web Remittance/electronic funds transfer from Bank of America account number xxxx6007 to American Express for the account of David J. Cranney |
| 22 | October 27, 2010 | Wire Fraud Count 1 | $13,312.46 electronic funds transfer from Bank of America account number xxxx5923 to Chase Home Finance |
| 23 | March 28, 2011 | Mail Fraud Count 16 | $25,000 electronic funds transfer from Bank of America account number xxxx8288 to Bank of America account number xxxx5923 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATION
## (18 U.S.C. §§981, 982 and 28 U.S.C. §2461)

The Grand Jury further charges that:

12. Upon conviction of any of the offenses in violation of 18 U.S.C. §1343 alleged in Counts 1-4, or in violation of 18 U.S.C. §1341 alleged in Counts 5-20, the defendant,

**JOHN WILLIAM CRANNEY,
aka JACK CRANNEY,**

shall forfeit to the United States, pursuant to 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

13. Upon conviction of any of the offenses in violation of 18 U.S.C. §1957 alleged in Counts 21-23, the defendant,

**JOHN WILLIAM CRANNEY,
aka JACK CRANNEY,**

shall forfeit to the United States, pursuant to 18 U.S.C. §982(a)(1), any property, real or personal, involved in such offenses, or any property traceable to such property.

14. If any of the property described in paragraphs 12 and 13 hereof as being forfeitable, as a result of any act or omission of the defendant –

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of this Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. §2461(c) and 18 U.S.C. §982(b), incorporating 21 U.S.C. §853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in subparagraphs a through e of this paragraph.

All pursuant to 18 U.S.C. §§981, 982 and 28 U.S.C. §2461(c).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; September 25, 2014.

Returned into the District Court by the Grand Jurors and filed.

9/25/14 @ 12:17pm