UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | Criminal No. 14-cr-10276-IT |
| | * | |
| JOHN CRANNEY, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

March 29, 2016

TALWANI, D.J.

I.   Introduction

Before the court is Defendant John Cranney's Motion to Dismiss [#65]. Defendant was charged in a 23-count indictment with violations of 18 U.S.C. §§ 1343 (Wire Fraud), 1341 (Mail Fraud), and 1957 (Money Laundering). The United States alleges that Defendant induced individuals to send him funds by mail and wire by representing, falsely, that he would invest those funds and pay those individuals a guaranteed rate of return. Indictment [#1] ¶ 3. Defendant moves to dismiss the indictment on the ground that it is insufficient to inform him of the charge against him and for him to prepare for trial. For the following reasons, Defendant's motion is DENIED.

II.   Background

The indictment charges that Defendant, starting in or about 2001 and continuing until in or about 2012, defrauded at least 15 individuals of more than $ 6 million, Indictment ¶¶ 2, 5, by committing the following fraud scheme:

> Defendant "devised and executed a fraudulent scheme by which he induced individuals to send him funds by mail and wire representing, falsely, that he would invest those funds and pay the individuals a guaranteed rate of return. In fact, as [Defendant] well knew, he did not intend to invest the funds he received, but instead

to use them for his own personal and business purposes and to make payments to others who had invested money with him."

Id. ¶ 3.

The indictment alleges that Defendant did the following in furtherance of his fraudulent scheme:

- Solicited people with whom he had personal and business relationships to give him money to invest on their behalf;

- Held himself out as a financially successful businessman when, in fact, as Defendant knew, his personal and business expenses regularly exceeded his legitimate income;

- Represented to some prospective investors that he had made a lot of money investing in the stock market (both for himself and others), which was false;

- Promised a guaranteed rate of return, usually in the amount of 2% above prime rate, but for some people, a fixed rate of return in amounts as high as 10%;

- Represented that the funds he received would be invested to earn money to pay the promised returns, even though he did not intend to invest the money and instead planned to use it for his own personal and business purposes, and to repay other investors;

- Represented to some investors that their money was pooled in funds holding millions of dollars when, in fact, as Defendant knew, Defendant did not pool the money in large funds because Defendant promptly disbursed most of the money he received for his own purposes and used that money to make payments to other investors and creditors;

- Represented to some investors that they could withdraw their money at any time or with just short notice to Defendant, and when some investors attempted to get their money back, offered excuses about why their money was unavailable and could not be withdrawn at that time, even though Defendant knew that those excuses were false and that he could not return investors funds because he had since spent them;

- Sent investors unsecured promissory notes signed by Defendant setting forth the guaranteed rates he had promised, then when investors questioned Defendant about why he had sent them promissory notes, he falsely explained he sent them the notes for tax reasons or otherwise for the benefit of the investor;

- Established official-sounding investment entities, named Cranney Capital I LLC and Cranney Capital III, Inc., directed investors to send their money to those entities, and used the entity names in documents sent to investors, leading investors to believe that their funds were being invested through those entities, when Defendant caused all the funds deposited to the entities' accounts to be transferred promptly to Defendant's other personal and business accounts;

- Established the Cranney Capital I LLC Employee Stock Ownership Trust, which he represented to prospective investors was a "qualified" plan in which they could "rollover" money from their IRA and 401(k) retirement accounts without paying withdrawal taxes and penalties, when, as Defendant knew, none of the investors was an employee of Defendant or Cranney Capital I LLC; and

- Caused "reports" to be sent to some investors that purported to represent the amounts that investors had earned and the total balance in their investment accounts, when, in fact, as Defendant knew, those stated returns were fictitious, and the stated balances did not exist because Defendant had long since spent the money for investment or his own personal or business uses or for making payments to other investors and creditors.

Id. ¶ 4.

The indictment includes counts for wire fraud (counts 1-4), mail fraud (counts 5-20), and money laundering (counts 21-23). Each count specifically incorporates by reference all of the above allegations. Id. ¶¶ 6, 8, 10. The wire fraud counts allege that Defendant, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for purpose of executing such scheme and artifice, transmitted and caused to be transmitted, by means of wire communications in interstate commerce, certain writings on or about four different dates. Id. ¶ 7. The mail fraud counts allege that Defendant, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for purpose of executing such scheme and attempting to do so, placed and caused to be placed in post offices and authorized depositories for mail matter, things to be sent and delivered by private or commercial interstate carrier, and

3

knowingly caused them to be delivered by such carrier on or about 16 dates. Id. ¶ 9. The money laundering counts allege that Defendant knowingly engaged and attempted to engage in monetary transactions in criminally derived property that was of value greater than $10,000 and was derived from specific unlawful activity (here, wire and mail fraud) on three specific dates. Id. ¶ 11.

III.     Applicable Law

"[I]n the ordinary course of events, a technically sufficient indictment handed down by a duly empaneled grand jury 'is enough to call for trial of the charge on the merits.'" United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2011) (quoting Costello v. United States, 350 U.S. 359, 363 (1956) (affirming denial of motion to dismiss). Defendants challenging the sufficiency of an indictment bear a heavy burden. United States v. Troy, 618 F.3d 27, 34 (1st Cir. 2010). The court must exercise its authority to dismiss cautiously because dismissing an indictment "directly encroaches upon the fundamental role of the grand jury." Whitehouse v. U.S. Dist. Court, 53 F.3d 1349, 1360 (1st Cir. 1995).

"When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true, mindful that the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (internal quotation marks omitted). "At the indictment stage, the government need not 'show,' but merely must allege, the required elements." United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014). Indeed, "courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind the indictment's allegations." Id. (quoting Guerrier, 669 F.3d at 4).

"When grading an indictment's sufficiency," the court looks "to see whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." Guerrier, 669 F.3d at 3. The indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment that tracks the language of the underlying statute generally suffices to meet this standard; provided, however, that the excerpted statutory language sets out all of the elements of the offense without material uncertainty." Troy, 618 F.3d at 34 (denying motion to dismiss indictment where document described the elements of the charged statute, the general factual scenario on which the charges rested, and the connection between the statutory elements and the facts). "In other words, the indictment may use the statutory language to describe the offense, but it must also be accompanied by such a statement of facts and circumstances as to inform the accused of the specific offense with which he is charged." United States v. Savarese, 686 F.3d 1, 6 (1st Cir. 2012). Specifically, in cases alleging fraud, where "guilt depends so crucially upon such *a specific identification of fact* . . . an indictment must do more than simply repeat the language of the criminal statute." United States v. Yefsky, 994 F.2d 885, 893 (1st Cir. 1993) (emphasis in original and internal quotation marks omitted). However, the "test for sufficiency [of the indictment] is not whether, in hindsight, the indictment or information could have been more complete, . . . but rather whether it fairly identifies and describes the offense." United States v. Allard, 864 F.2d 248, 250 (1st Cir. 1989).

IV.   Discussion

Defendant argues that the indictment and each of the counts therein are not sufficiently precise to alert him to the charges he is facing so as to permit him to prepare for trial and plead

double jeopardy in any future prosecution for the same offense.  As set forth below, the indictment is sufficient, and therefore Defendant's motion is denied.

   *a. Wire Fraud (Counts 1-4)*

  The wire fraud counts re-allege and incorporate by reference paragraphs 1-5 of the indictment, which contain allegations of Defendant's fraudulent scheme and the acts in furtherance of that scheme.  Indictment ¶ 6.  The counts then "track[] the language" of the wire fraud statute.  Troy, 618 F.3d at 34.  They allege that Defendant "devised a scheme and artifice to defraud," made false statements "for the purpose of executing" the fraudulent scheme, and used "wire communications in interstate commerce" in furtherance of the scheme.  Indictment ¶ 7; see United States v. Foley, 783 F.3d 7, 13 (1st Cir. 2015) (stating that the elements of wire fraud are (1) the devising or attempting to devise a scheme or artifice to defraud; (2) the knowing and willing participation in the scheme with the specific intent to defraud; and (3) the use of interstate wire in furtherance of the scheme).  Then, each count describes the content of a wire transmission, and to which victim or victims and the approximate date on which the wire was sent.  Id.  The descriptions of the contents of each wire and the approximate dates on which the wires were sent, in conjunction with the incorporated allegations regarding the details of Defendant's overall fraudulent scheme and the many acts taken in furtherance of that scheme, constitute a sufficient "statement of facts and circumstances as to inform [Defendant] of the specific offense with which he is charged."  Savarese, 686 F.3d at 6-7 (finding indictment sufficient where counts tracked language of statute, gave dates of alleged conduct and victims' initials, and where prior portions of indictment contained additional details about offenses charged).

In arguing that the wire fraud counts are insufficient, Defendant focuses specifically on paragraph 4j of the indictment, which alleges that Defendant established the Cranney Capital I LLC Employee Stock Ownership Trust to convince investors to send him money from their retirement accounts, even though he knew that none of the investors were his employees or employees of Cranney Capital I LLC. Indictment ¶ 4j. He argues that the wire fraud counts fail to allege that Defendant knew that only employees were allowed to invest in ESOT plans and that he intentionally withheld such information from his investors. Thus, Defendant asserts, the indictment alleges only that Defendant was at worst negligent in setting up the ESOT accounts and not that he willfully and knowingly committed fraud.

This argument relies on the mistaken assumption that counts 1-4 are linked only to the allegations in 4j. In fact, those counts incorporate all of the allegations contained in paragraphs 1-5 of the indictment, not just those in paragraph 4j. Id. ¶ 6. Paragraph 4j does not allege a separate crime. Instead, it alleges one of several acts Defendant took in furtherance of the allegedly fraudulent scheme, which is described in in detail paragraph 3. Viewing the wire fraud counts together with the material incorporated into those counts, the counts sufficiently describe the offenses charged.

  *b. Counts 5-20 (Mail Fraud)*

The mail fraud counts similarly re-allege and incorporate counts 1-5 of the indictment, which allege Defendant's fraudulent scheme and acts taken in furtherance of it, Indictment ¶ 8, and track the language of the mail fraud statute. They allege that Defendant "devised" and intended to devise a "scheme and artifice to defraud," and for the purpose of executing that scheme, used the mails in furtherance of that scheme. Indictment ¶ 9; United States v. Soto, 799 F.3d 68, 92 (1st Cir. 2015) (stating that the elements of mail fraud are (1) the devising or

attempting to devise a scheme or artifice to defraud; (2) the knowing and willing participation in the scheme with the specific intent to defraud; and (3) the use of the mails in furtherance of the scheme). Each of the mail fraud counts then describes a mailing allegedly in furtherance of that scheme, including details about its content, the alleged recipient-victim of that mailing, and the date on which the mailing was sent. Indictment ¶ 9. These counts contain the information that is required: they track the language of the mail fraud statute, Troy, 618 F.3d at 34 (noting that tracking the language of the underlying statute is usually sufficient), and are "accompanied by [a] statement of facts and circumstances" as to inform Defendant of what he is charged. Savarese, 686 F.3d at 6.

Defendant's arguments as to why the mail fraud counts are insufficient are unavailing. First, he complains that the language in the counts themselves do not contain any false representations. This is not true. Each count specifically incorporates paragraphs 3 and 4 of the indictment,[1] which describe Defendant's alleged fraudulent scheme and false representations that he made in furtherance of that scheme.[2]

Second, he states that the particular allegations in paragraph 3—that he executed a fraudulent scheme to induce individuals to send him funds in exchange by representing that he would invest those funds and pay a guaranteed rate of return when he in fact did not intend to

---

[1] Similarly, Defendant argues that the term "report" in counts 6, 8-16, and 18 is not defined. This is also not true. The term is defined in paragraph 4j of the indictment, and that definition is incorporated into counts 6, 8-16, and 18.

[2] Defendant cites United States v. Yefsky, 994 F.2d 885 (1st Cir. 1993) in support of his argument, but that case is distinguishable. In that case, the court dismissed the indictment as insufficient because United States "did not divulge the factual basis" of a mail fraud conspiracy into counts alleging mail fraud conspiracy *nor* expressly incorporate that factual basis from other parts of the indictment into those counts. Id. at 893. The court noted, however, that the United States could have drafted a sufficient indictment by expressly incorporating into the counts at issue the required factual basis from other parts of the indictment. Id. at 894. Here, on the other hand, the mail fraud counts <u>did</u> expressly incorporate the factual basis for the mail fraud charges. Indictment ¶ 8.

8

invest those funds and instead use those funds for his own purposes—were not linked to any of the particular victims named by their initials in the mail fraud counts.  Additionally, he states that none of the alleged acts taken in furtherance of the scheme, Indictment ¶ 4, are linked to particular victims.  Therefore, Defendant argues, he does not have notice about which of his alleged acts or misrepresentations applied to which victim.

It is sufficient that indictment counts "faithfully track[] the language of the statute [and notify Defendant] not only of the crime charged but also of the relevant factual scenario."  Troy, 618 F.3d at 35.  The mail fraud counts in the indictment do so here.  An indictment does not need to contain the level of detail that Defendant requests.  See, e.g., United States v. Azad, 809 F.2d 291, 295 (6th Cir. 1986) (rejecting contention that mail fraud counts had to list all of the particular specific fraudulent acts and each specific victim concerned).  It is enough that the indictment contains a "clear and specific description of the fraudulent scheme," which "need not be pleaded with all the certainty in respect of time, place, and circumstance . . . ."  Id.  Defendant is entitled to additional information in discovery, but the United States is not required to include that information in the indictment.

Finally, Defendant argues that the United States does not allege how each specific mailing was fraudulent and how each mailing induced a victim to send Defendant money.  These specific allegations are not required in an indictment for mail fraud (or even to actually prove mail fraud).  In fact, a specific mailing does not have to be fraudulent; there only has to be "a connection or relationship between the mailing and the fraudulent scheme [such that] the mailing was part of the execution of the scheme."  Soto, 799 F.3d at 93 (internal quotation marks omitted).  Even "a mailing that is itself innocent and that seems to accomplish an innocent end can nonetheless be in furtherance of a fraudulent scheme."  United States v. Pimental, 380 F.3d

9

575, 588 (1st Cir. 2004).  The indictment does enough; it sets out the alleged scheme and describes the mailings that Defendant made in furtherance of that scheme.

### c. Counts 21-23 (Money Laundering)

Defendant argues that the money laundering counts (21-23) should be dismissed because the "specified unlawful activities" identified in these counts and on which these counts rely are insufficiently pleaded.  Because the indictment sufficiently describes the mail and wire fraud charges, the money laundering counts are similarly sufficient.

## V.   Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [#65] is DENIED.

IT IS SO ORDERED.

March 29, 2016                                                        /s/ Indira Talwani
                                                                              United States District Judge