UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | No. 14-cr-10276-IT |
| JOHN CRANNEY, | ) ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REDACT DEPOSITION**

The Court should deny the defendant's motion to exclude portions of Rule 15 deposition testimony of victim J.S. because the challenged testimony does not contain hearsay. First, testimony by J.S. about statements made by Paul Lagris ("Lagris") are admissible both because Lagris made his statements as the defendant's agent and because the government offers this testimony to prove the fact that Lagris said certain things, not the truth of the matter asserted. Second, the testimony that the defendant challenges as including hearsay statements by J.S.'s deceased wife, E.S., does not include any statements by E.S. The testimony only concerns an action that J.S. and his wife did not perform. J.S. did not testify about anything E.S. told him. As such, all of the statements challenged by the defendant are non-hearsay under Federal Rule of Evidence 801(c)(2) and (d)(2)(D).

**LEGAL STANDARD**

Hearsay does not include the statements of a party's agent on a matter within the scope of that agency, and while the agency relationship existed, when offered against that party. Fed. R. Evid. 801(d)(2)(D); *see also Ferring Pharm., Inc. v. Braintree Labs., Inc.*, 215 F. Supp. 3d 114, 121 (D. Mass. 2016). Hearsay also does not include nontestimonial conduct or statements not offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c); *see also*

1

*United States v. Soto*, 799 F.3d 68, 89 (1st Cir. 2015); *United States v. Cruz-Diaz*, 550 F.3d 169, 176 (1st Cir. 2008); *see also* Rule 801(c), Notes of Advisory Committee ("[I]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.").

## ARGUMENT

I. **Statements Lagris Made As The Defendant's Agent And Not Offered For Their Truth Are Admissible.**

Starting in 2006, Lagris help the defendant to market his purported investment fund to people like J.S. and E.S., and he earned commissions for his work.[1] According to correspondence between Lagris and the defendant (Trial Exhibits 345 and 346), the defendant asked Lagris "to assist [] in communicating with [] people [including E.S.] who were also investing in [his] fund." In the correspondence, Lagris asks the defendant to pay him the "commissions" that the defendant owes him in relation to E.S.'s "investments." Attached to the correspondence is a schedule of commissions, with multiple entries for E.S., starting in April 2006, about the time that J.S. testified that he spoke with Lagris about investing in Cranney Capital III. In his correspondence with the defendant, Lagris explains, "The accounting here is based on a 7% Commission and Bonus you offered us for each new investment . . . ." In discovery, the defendant has received memoranda of interviews of Lagris that support the facts described above. The United States expects Lagris's testimony at trial to be consistent with his

---

[1] The government does not suggest that Lagris is a co-conspirator and does not argue that the statements are admissible under Rule 801(d)(2)(E). To the contrary, the government expects Lagris to testify at trial that the defendant also told him that he was managing some kind of investment fund and that, like J.S., relying on the defendant's representations, Lagris invested in the defendant's purported "fund."

prior statements to the government and his correspondence with the defendant.[2] Assuming he does so, J.S.'s testimony about his conversation with Lagris is admissible under Rule 801(d)(2)(D).

Moreover, the government offers J.S.'s testimony about Lagris to prove that Lagris made certain statements and to provide context for J.S.'s subsequent decision to invest money in the defendant's purported investment fund. Whether Lagris actually intended to invest with the defendant at that time is irrelevant in this context. Rather, the issue is whether the discussion about which J.S. testified involved discussion of investments, rather than discussions of personal loans to the defendant. The testimony in question concerns a discussion between J.S. and Lagris, shortly after a discussion with the defendant, Lagris, and E.S., in which the defendant explained how he was investing money in a fund for people:

> Q. . . . [W]hat did you say to Mr. Lagris?
> A. I asked him if he was going to invest in it.
> Q. What did Mr. Lagris say in response?
> [. . .]
> A. "Yes."
> Q. Did Mr. Lagris indicate in any way whether or not he had given Mr. Cranney money?
> A. Yes.
> Q. What did he say?
> [. . .]
> A. "Yes."

(Testimony of J.S. at 28:13 to 29:11.) J.S. testified that, about a month later, he invested money in the defendant's sham Cranney Capital III investment fund. This testimony is relevant to show why J.S. invested and to show that the J.S. and Lagris talked about investments, not personal

---

[2] The government will offer Lagris's testimony before offering J.S.'s video testimony.

loans to the defendant to cover his expenses.[3]  The accuracy or truthfulness of what Lagris told J.S. is irrelevant in this context.  Accordingly, the challenged testimony does not involve any inadmissible hearsay.

## II. Testimony By J.S. Regarding The Negotiation Of Promissory Note Terms Does Not Include Any Out Of Court Statements.

The defendant also seeks to exclude testimony by J.S. that does not include an out-of-court statement.  The testimony reads as follows:

> Q. When did you first learn, for example, that the term of this note, as it says in the second paragraph here, "will be one year from the date of deposit but will renew automatically to the conditions and interest specified in this letter if the funds are not withdrawn at the end of the first year"?  When did you first learn of that term?
> A. When I read it.
> Q. When you read it in this letter?
> A. Yes.  He pretty well made the terms.  We didn't.

(Testimony of J.S. at 40:21 to 41:6.)  Defendant argues that this testimony suggests that E.S. told J.S. that the defendant created all the terms of the note.  But J.S. does not say that E.S. told him anything.  J.S. testified only that he and his wife did not make the terms of the note.  This is testimony about conduct.  There is no statement by E.S. in this testimony, and thus, there is no hearsay to be excluded.

## CONCLUSION

As explained above, the Court should deny Defendant's motion to redact testimony by J.S. because the testimony does not include inadmissible hearsay.

---

[3] To the extent that the defendant challenges J.S.'s testimony as a recent fabrication or as evidence of improper motive, as defense counsel did when cross-examining J.S., this testimony by J.S. is also admissible as a prior consistent statement under Rule 801(d)(1)(B)(i).  The response from Lagris is admissible in this instance to provide context.  *See Soto*, 799 F.3d at 89.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

Dated: March 6, 2018     By:     /s/Kriss Basil
MARK J. BALTHAZARD, BBO# 544463
KRISS BASIL, BBO# 673074
Assistant United States Attorneys
John Joseph Moakley Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
Tel: (617) 748-3100
kriss.basil@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: March 6, 2018     /s/Kriss Basil
KRISS BASIL
Assistant United States Attorney