# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 14-cr-10276-IT |
| v. | ) |
| JOHN CRANNEY, | ) |
| Defendant. | ) |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION OF JUDGMENT OF ACQUITTAL

The Court should deny the defendant's motion for a judgment of acquittal as to Counts 11, 12, 14, 15, 19, and 21. Ample evidence proves beyond a reasonable doubt that the defendant defrauded Elizabeth Sutton, Mary Jo Ewing and Rory Ewing, and Richard Pochepan.

Fundamentally, the defendant erroneously relies on the idea that his decision to issue promissory notes means he did not defraud anyone. The evidence here, however, is that the note or "loan" was the fraud. Multiples witnesses testified that Cranney never mentioned a loan before he obtained money by falsely promising to invest their money in an investment fund. Regardless of what the defendant called the transactions after the fact, the evidence is that the victims, including Sutton, Ewing (by and through her son, Rory), and Pochepan, gave money to Cranney because he led them to believe that he would invest their savings and retirement money to generate an above-market, guaranteed return. The loan was simply the guarantee.

*First*, as to Counts 11, 12, 14, and 21, the evidence is that the defendant lied to Elizabeth and Jerry Sutton to get their money by telling them he would invest their money. The Suttons, with Paul and Laura Lagris, watched the defendant at his "trading station" make a presentation about trading stocks to generate high returns that could support high interest rates. Numerous

witnesses testified that Cranney used the "trading station" as a portal into the stock market. Asked what he saw on the screens, Jerry Sutton testified, "The best I remember, that he was explaining how he was investing the money that he -- that Liz had given -- or loaned him, how he was making money, and he could pay better interest rates than we were getting from the company that we had at home." He continued, "And the best I could remember is that he could tell where to invest the money, and that was kind of the way it was. He could make -- make more than we were getting and that's why he could give us prime rate." Asked what he believed Cranney Capital III was based upon what Cranney told him, Sutton testified, "[I]t was his business that he was – that's what Capital III was, that he was using this to develop the money -- he could invest that money that we were loaning him to invest in this program that he had set up." On cross-examination, defense counsel tried to lead Sutton into an admission that Cranney had said the transaction was only a loan, but Sutton rebuffed that idea, clarifying that Cranney had said the money was for "investment purposes."

To be sure, the Suttons received promissory notes for their investments, but the evidence is that this was the fraud scheme in motion. Paul Lagris testified that he also knew that the transaction was in the form of a loan, but Cranney told him that his money was in a "big wahoo" investment fund. Cranney showed Lagris how he traded to generate returns. Cranney told Lagris that he called the transaction a "loan" because he lacked a proper securities trading license. Regarding Sutton, Lagris testified, "Jack had called us and said there's a gal in the Mid-West, not in his organization but in Shaklee and successful in Shaklee, wants to invest with him. And would we, in his place, would we call her on a regular basis and create a positive relationship so that she would continue to be communicating with him." Cranney gave a presentation about his investing in the trading room to the Suttons with Lagris present, and Lagris told Sutton he was

"investing" with Cranney – not *loaning* Cranney money to pay his bills. Cranney paid Lagris commissions for helping to manage his relationship with the Suttons as investors.

*Second*, as to Count 15, the evidence is that Cranney tricked Mary Jo and Rory Ewing. Rory Ewing testified that he helped his mother with her business after she was stricken with Parkinson's Disease. The United States presented evidence that Ewing took charge of transferring Mary Jo Ewing's money to Cranney. The government also presented evidence that Cranney told him that he would invest Mary Jo Ewing's retirement funds. Ewing testified that he understood from Cranney that the investment would be in stocks. Ewing also testified that the retirement money was all that his mother had. Ewing also testified that he invested with Cranney at the same time he oversaw the transfer of his mother's funds to Cranney. Later, Ewing communicated with Cranney about minimum required distributions from his mother's retirement account. The jury can reasonably infer that, in reliance on her son, Mary Jo Ewing invested her money with Cranney based on his false promises to Rory Ewing that he would invest her money in a retirement fund account.

Third, as to Count 19, the evidence is that Richard Pochepan only gave his retirement savings to Cranney because the defendant explicitly told him that he would invest the money. Pochepan testified that Cranney told him that Cranney was investing money for other people and that he offered Pochepan a special opportunity to have Cranney invest his money too. Cranney gave Pochepan the Robert Deel financial booklet and then pitched the investment to him and to his wife in front of the "trading station." Pochepan testified that, after he transferred money to Cranney, he believed that Cranney was actually managing his money. He testified that he did not think that he was loaning Cranney money to pay his bills. Pochepan did not testify that Cranney told him that Cranney would be using Pochepan's retirement money to service Cranney's debt to

Darrell Arendts, one of the bankruptcy creditors (as seen in Exhibit 290.16). Pochepan testified that when Cranney sent him a TValue report, he believed his money actually existed in an account and had increased in value. Further evidence of Cranney's fraud appears in the Department of Labor filings for Cranney Capital I, which show that for 2008, the year of the so-called "loan" (the purported rollover of Pochepan's money), Cranney reported that Cranney Capital I had no loans, no rollovers, and no participants except Cranney. Taking all of this evidence together, a reasonable jury could find Cranney guilty beyond a reasonable doubt on Count 19.

Based upon the evidence summarized above, and other evidence in the record, there is sufficient evidence to convict Cranney on all the challenged counts, and the Court should deny the defendant's motion.

                                        Respectfully submitted,

                                        ANDREW E. LELLING
                                        United States Attorney

Dated: May 7, 2018          By:    /s/Kriss Basil_____
                                        MARK J. BALTHAZARD, BBO# 544463
                                        KRISS BASIL, BBO# 673074
                                        Assistant United States Attorney
                                        John Joseph Moakley Courthouse
                                        One Courthouse Way, Suite 9200
                                        Boston, Massachusetts 02210
                                        Tel:  (617) 748-3100
                                        kriss.basil@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: May 7, 2018                        /s/Kriss Basil_____
                                                       KRISS BASIL
                                                       Assistant United States Attorney